Dougherty *v.* Schlotman, Shillito & Co., et al.

---

## R. B. DOUGHERTY *v.* SCHLOTMAN, SHILLITO & CO., ET AL.

On the 11th of January, 1867, G. transferred his stock of dry goods to D. On the 12th of January, 1867, S. & Co., creditors of G., attached the goods as his property, upon a claim of $2,000, on the ground that G. had disposed of his property with intent to hinder, delay, and defraud his creditors. D. took the goods in replevin, giving his replevin bond, with sureties, in the sum of $10,000.

On the 20th of May, 1869, while the cause was pending, S. & Co. filed a cross-petition setting forth the insolvency of G. at the time of the transfer to D., and giving the names of creditors and the amounts of their claims, in the aggregate $18,000, while the entire assets of G. were only $8,000, and alleging that the transfer was made to hinder, delay, and defraud his creditors, and asking, under section 17 of the assignment act, that the transfer be declared void, and that the assets might be administered by an assignee for the benefit of the creditors. Motion to strike out the cross-petition having been overruled, and the jury having

returned a verdict for the defendants against the validity of the transfer, and found the value of the property to be $7,500, which, by decree, was distributed among the creditors:

*Held,* that the court did not err in overruling the motion to strike out the cross-petition; that the bond took the place of the property, and that the recovery on the cross-petition was not limited to the amount of the claim of the attaching creditors, but covered the entire value of the property replevied, as found by the jury.

On the 12th day of January, 1867, John Shillito & Co. commenced a suit against G. & J. Gibson, on a claim of $1,728.40, and procured an attachment, on the ground that they had disposed of their property, a stock of dry goods, with the intent to defraud their creditors, and caused it to be levied upon as the property of the defendants.

On the 14th of the same month, Louis Stix & Co. commenced suit against the Gibsons for $1,980.50, and caused an attachment to be issued on the same ground.

On the same day, viz: January 14th, the plaintiff, Robert B. Dougherty, commenced a suit in replevin against the sheriff, and took the attached goods, claiming them by virtue of a purchase made on the 11th of January from the Gibsons, and giving a replevin bond in $10,000, with sureties. The validity of the sale and transfer on the 11th of January, 1867, by the Gibsons to the plaintiff, Dougherty, became the subject of inquiry and decision by the jury. The verdict was against the sale.

Prior to the trial in the replevin case, on the 20th of May, 1869, the defendants in replevin filed a cross-petition, in which they set forth that on the 11th of January, 1867, the time when the transfer of the stock of goods was made by the Gibsons to the plaintiff, they owed sundry debts to sundry creditors, naming them and describing the claims, amounting to $18,319.35, while their property, consisting of a stock of dry goods, amounted in value to but $8,000, which was all their property, and alleging that said transfer was made with the intent to hinder, delay, and defraud defendants and others, who were creditors of the Gibsons, in the col-

lection of their claims, and they asked that the transfer might be declared by the court to have been made with the intent to hinder, delay, and defraud said defendants and others, who were creditors of the Gibsons, and to be void; that said defendants might be appointed assignees and trustees to take possession of said stock, or that the same might be administered as in case of assignments to trustees for the benefit of creditors.

A motion was made to strike this cross-petition from the files, which motion was overruled, and it was claimed that the court erred.

*Okey*, and *Lincoln, Smith, Warnock & Stevens*, for plaintiff.

*J. & R. A. Johnston*, and *Matthews & Ramsey*, for defendants.

TAFT, J. An important point made is upon the overruling the motion to strike out the cross-petition of the defendants. It turns upon the application of section 17 of the assignment act as amended in 1863, S. & S. 397, which provides, " That all transfers made with intent to hinder, delay, or defraud creditors shall be declared void at the suit of any creditor," and that after such transfer shall have been declared to have been made with such intent, the probate court shall appoint an assignee, who shall proceed to administer the property for the benefit of the creditors, requiring a publication of a four weeks' notice of the pendency of the suit, and allowing to the creditors fifteen days after the expiration of the notice for filing their answers, in order to entitle themselves to a *pro rata* distribution, to the exclusion of those creditors who do not present their claims by answer within the fifteen days after the expiration of the notice. The cross-petition is founded on this act. By the replevin suit the plaintiff in replevin, we think, acquired the property and possession of the goods so far as the parties to

the suit were concerned, and he gave his replevin bond, with sureties, to take the place of the *property itself*. If he should fail to sustain his right to the property, he would be responsible to the attaching creditors for the amount of their debts, and to the debtor or original owner of the property for the balance after paying the attaching creditors, unless he had acquired against the original owner a title to such balance by a valid sale.

But if there had been mortgagees of the property subsequent to the attaching creditors, but prior in right to the plaintiff, by his action of replevin he would have been bound to pay over the surplus to them, to the extent of their mortgages, if they asserted their claim by cross-petition. *Armstrong* v. *McAlpin*, 18 Ohio St. 184, and *Morgan* v. *Spangler*, recently decided by the Supreme Court, and to be reported in 20 Ohio St. Now the cross-petition, in the present case, goes upon the theory that the transfer of January 11, 1867, was such that it inured, under the statute, to the benefit of all equally who should come in by suit and claim it, and that the creditors' right related to the date of the fraudulent transfer, and that this right of the creditors was, therefore, prior to and better than that of the plaintiff by his replevin. By filing the cross-petition the defendants waived the preference sought by their attachments in favor of the creditors who should come in under their cross-petition and claim the benefit of the statute, and as plaintiffs in the cross-petition they were left with no other benefit from the transfer to Dougherty than that of a *pro rata* distribution with the other creditors who should come in. They were, however, enabled to bring forward by their cross-petition other claims of their own not included in the attachment. The jury have found that the transfer to the plaintiff in replevin was made with intent to hinder, delay, or defraud creditors, and so falls within section 17 of the assignment law to which we have referred. We think that by our statute the bond takes the place of the property so far as the original owner and the parties to the replevin suit are

concerned. The undertaking is to be in double the value of the property taken, and "to the effect that the plaintiff shall duly prosecute the action and pay all costs and damages which may be awarded against him." In *Jennings* v. *Johnson*, 17 Ohio, 155, it was held "that the replevin bond took the place of the property to the extent of the interest of the defendant in replevin." The interest of the defendants in replevin in the present case would, in the first instance, be the amount of the attachments.

But in *Conrad* v. *Pancost*, 11 Ohio St. 685, it was held that section 17 of the act of April 6, 1859, 1 S. & C. 713, in relation to assignments by insolvent debtors, in no respect qualified section 191 of the Code, but operated merely upon the *title* of the property already so assigned or conveyed affixing to it the same title under the circumstances as if *expressed in a written assignment* by the debtors," and it was competent for the court to direct execution of the trust. The right of creditors depended upon the transfer made by the debtor, and took effect from the execution of the transfer, though the proceedings to enforce their right were commenced long afterward.

Section 17, under which the case of *Conrad* v. *Pancost* was decided, provided that "all transfers made with intent to hinder, delay, or defraud creditors, shall inure to the equal benefit of all creditors," "and the probate judge, after such transfer *shall have been declared by a court of competent jurisdiction to have been made with the intent aforesaid,* at the application of any creditor, shall appoint an assignee" to administer the trust.

If that act had remained in force, the case of *Conrad* v. *Pancost*, 11 Ohio St. 686, would be an authority to hold the property upon the finding of this jury to inure to the benefit of all the creditors equally, and upon the declaration of that fact by a competent court, the probate court would have proceeded to administer the trust.

This section 17, as amended by the act of 1863, provided that all such transfers shall be declared void at the

suit of any creditor, and the probate judge, after the said intent has been found by a competent court, shall proceed to appoint an assignee to administer the fund for the benefit of the creditors as in other cases of assignments to trustees, provided four weeks' notice shall be published by the plaintiff of the pendency of the action, and that all creditors who shall come in by answer with their claims, within fifteen days after the expiration of the publication, shall be entitled to have distribution to the exclusion of all who do not so come in, and those who do not so come in may have equal distribution of what remains after paying in full those who have come in in time.

We think the amended section gives to the fraudulent transfer the effect of an assignment for the benefit of the creditors as effectually as it did before the amendment, and the proceedings under it relate to the time when it was made.

It is claimed that this last act is different from the former, in that it makes void such transfer only *at the suit of a creditor;* and that here is not a suit of any creditor to make it void.

We regard the filing of a cross-petition by a creditor setting up his claim and asking that the transfer be declared void, as the commencement of a suit within the meaning of the statute. The defendants have, however, failed to comply with the requirement that four weeks' notice shall be published, in order that creditors might come in with their claims by answer. Nevertheless, we think that the notice may yet be published, and after the four weeks shall have elapsed and fifteen days more, the distribution may be made among the creditors who shall have come in, as the statute requires. But the cross-petition was not liable to be stricken out, and the trial having established the right of property, and the amount of the damages, has given the court a basis on which to proceed in the administration of this fund. As no creditor has applied to the probate court for the appointment of an assignee, this court may, under

the authority of *Conrad* v. *Pancost,* proceed to administer the fund. As to the manner of administering the fund, or the steps to be taken, it is not necessary that we should be more specific. It is enough that we now declare that the cross-petition was properly filed, and that the motion to strike it out was properly overruled.

We come, then, to the errors assigned at the trial.

It is claimed that the court should have instructed the jury that they could not find for the defendants unless the evidence satisfied them beyond a reasonable doubt that the transfer was made with intent to hinder, delay, or defraud creditors, because it would be finding the plaintiff guilty of a crime. We think it would have been erroneous to give the charge asked, because we do not think that the hindering, or delaying, or defrauding of creditors, which would be sufficient to justify a court in declaring a transfer void under section 17, would necessarily amount to the "*cheating and defrauding,*" or to "the *fraudulent* transfer to defeat his creditors," which constitutes the misdemeanor under section 12 of the act for the punishment of certain offenses therein named, passed March 8, 1831. It is impossible for us to decide that the one is the same with the other, and a verdict in this case would not be evidence that the offense defined in said section 12 had been committed. We think the ruling of the court was right.

Objection is urged that the appraisement made for the purpose of the replevin bond, was ruled out when offered by the plaintiff. There was other and better evidence, and while we might not have been willing to reverse the judgment, if the evidence had been received, we do not think the plaintiff was prejudiced by its exclusion.

An objection is also urged against the verdict, because the court permitted the amount of the insurance procured and kept on the stock by the plaintiff, to be given in evidence. This seems to have been an act on the part of the plaintiff in the nature of an admission, and, as such, it appears to us to have been competent.

It is also claimed that parol evidence was permitted to prove the amount of the insurance, when the policy was the best evidence. But the policy was in the hands of the plaintiff, and notice was given him to produce it, which he did not do. Plaintiff's counsel complain that the policy was in Louisville, and the notice was too short for the plaintiff to get it before the testimony was allowed to be given. But the testimony related merely to the amount insured, and the policy was in the hands of the plaintiff, and it does not appear that the testimony was not correct, which could have been made to appear on motion for a new trial, if such had been the case, by the production of the policies. It is quite clear to us that the plaintiff has not been prejudiced by this testimony being admitted instead of the policy. Besides, we regard the notice under the circumstances as sufficient to warrant the admission of secondary evidence.

As to conversations preceding the issuing of the policy, they were competent, not to prove a contract of insurance, but to prove admissions of the plaintiff as to the value of the property. And the same principle applies to declarations made by the Gibsons in presence of the plaintiff, and not denied.

As to the judgment on the verdict, however, we think it should be modified so as to make it accord with the views we have expressed, in order that it may be administered under section 17 of the assignment act, as amended in 1863.